IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

BERNADETTE A. HARTMAN,

              Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

OPINION AND ORDER

17-cv-921-bbc

---

Plaintiff Bernadette A. Hartman is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Dkt. #6. Plaintiff seeks remand of that decision, arguing that the administrative law judge who decided the case did not properly consider either the opinion of her treating psychiatrist or her own testimony regarding her symptoms and limitations.

For the reasons explained below, I am remanding this case so the administrative law judge can reconsider the opinion of plaintiff's treating psychiatrist and plaintiff's subjective complaints and better explain his reasoning with respect to the conclusions he reaches.

The following facts are drawn from the administrative record (AR).

## FACTS

Plaintiff contends that she became disabled on September 4, 2013 because of anxiety and depression. AR 13, 51. She last worked in September 2013, after she was fired from

her job as a deli worker for frequent tardiness.  AR 17, 32-33.  Plaintiff was 55 years old when she applied for benefits on June 16, 2014.  AR 13, 19.

A.  Relevant Medical Evidence

1.  Dr. Terrence Norton

Critical to plaintiff's appeal are the assessments of Dr. Terrence Norton, a psychiatrist whom plaintiff saw every one to two months for four years.  AR 17, 40.  As the following summary of her visits shows, her symptoms and overall state fluctuated throughout this period:

- November 1 and December 3, 2013:  little or no improvement with medications and low moods, low motivation and social withdrawal most of the time.  Dr. Norton adjusted plaintiff's medications and discussed ways of dealing with her stress.  AR 218-21.

- January 13, 2014:  moods were better most of the time and she was calm, sleeping well and had no manic symptoms.  AR 222.

- February and April 2014:  stable moods, no mania and most aspects of mental status were normal or good.  AR 224-26.

- July 21, 2014:  worsening symptoms, including low moods with frequent crying spells, difficulty sleeping, feeling tired all day and spending most of the time at home except for going camping and riding a motorcycle.  AR 257.

- September 4, 2014:  more stable moods, better sleeping, getting out and enjoying things more and good concentration.  AR 245.

- October 17, 2014:  socially withdrawn and lower moods for two to three weeks, calm, sleeping well, lower interest, depressed mood, fair energy and "ok" concentration.  AR 259.

- November 19, 2014: good moods without any lows, feeling steady, sleeping well and enjoying time with family and friends. AR 260.

- January 8, 2015: more depressed in past months, more socially withdrawn, poor energy and anxious. AR 261.

- February 19, 2015: mood s not good, staying home most of the time, gets anxious around others, good concentration and normal energy. AR 262.

- March 31, 2015: doing better on higher dose of medications, moods good, calm and spending more time outdoors. AR 263.

- May 15, 2015: feeling well and calm, getting out more, staying active and keeping house clean. AR 264.

- June 30, 2015: feeling more down but staying busy around house, riding motorcycle and camping. AR 265.

- August 7, 2015: stable moods and feeling fairly well overall. AR 266.

- September 22, 2015: feeling more down, lower moods, increased fogginess with decreased concentration and increased nervousness. AR 267.

- October 15, 2015: switched medication three days ago but no benefit yet; lower moods, energy and motivation. AR 268.

- November 11, 2015: symptoms progressively worsening with lower moods, decreased motivation, lower energy, increased social withdrawal, recent suicidal thoughts without plans or attempts and increased stress in family. AR 269.

- December 14, 2015: moods, energy and motivation better with new medication, improved but isolates at home most of time. AR 270.

- February 10, 2016: fluctuating moods and lower energy. AR 271.

- April 1, 2016: stable moods, things going well and sleeping well. AR 272.

- June 1, 2016: had been doing well with stable moods until stressors at home began a few weeks ago. AR 273.

- July 14, 2016: feeling well with stable moods, good energy and enjoying time with family and friends. AR 274.

- August 25, 2016: more down in past month with financial stress, lower energy and decreased motivation. AR 284.

- September 29, 2016: has had a rough couple of weeks but denies feeling sad, down or having racing thoughts, increased energy or impulsive actions. AR 288.

- December 7, 2016: moods stable but tremors have worsened. AR 292.

In a mental impairment questionnaire completed on December 14, 2015, Dr. Norton noted that plaintiff was taking three different medications for moderate but stable bipolar disorder and that she had a global functioning score of 45. He stated on the form that plaintiff was easily distractible and had difficulty thinking or concentrating, low energy, decreased motivation, low moods and a limited range of affect. Dr. Norton wrote that her symptoms worsen under heightened stress. He ranked her as having "moderate" to "moderate-to-marked" limitations in most areas of functioning and marked limitations in adaptation (responding appropriately to workplace changes, traveling to unfamiliar places, setting realistic goals and making plans independently), carrying out detailed instructions and maintaining attention and concentration for extended periods. He also found that plaintiff would be absent from work more than three times a month. AR 247-51.

About a year later, on January 11, 2017, Dr. Norton completed another mental impairment questionnaire on which he noted similar symptoms but ranked plaintiff's limitations as "none-to-mild" in a few areas related to social interactions and carrying out simple instructions but "moderate" or "moderate-to-marked" in most areas. He found that

plaintiff had marked limitations in her ability to complete a workday without interruption from psychological symptoms and stated that she would miss work more than three times a month. AR 275-79.

2. Drs. Russell Phillips and Esther LeFevre

Two state agency physicians also offered opinions on plaintiff's ability to work. During the initial review of plaintiff's application for benefits, Dr. Esther LeFevre reviewed plaintiff's medical records on September 30, 2014 and concluded that plaintiff had moderate difficulties in maintaining concentration, persistence or pace—specifically maintaining concentration and persistence for extended periods—but no more than mild limitations in other functional areas. AR 55-56. LeFevre noted that plaintiff had a diagnosis of bipolar disorder but that recent examinations showed that with therapy and medication, her moods were more stable, her sleep had improved, she was getting out more and she had good concentration. On April 15, 2015, at the reconsideration level of review, Dr. Russell Phillips reached a similar conclusion with respect to plaintiff's concentration, persistence or pace and noted that although plaintiff's condition had improved, her history of "ups and downs" meant that she would not likely respond well to significant pressure or stress in a work environment. AR 65-67.

B. Administrative Hearing

On February 1, 2017, Administrative Law Judge Joseph Jacobson held an administrative hearing at which plaintiff and a vocational expert testified. AR 13. Plaintiff testified that she was fired from her last job because she could not bring herself to get dressed and drive to work and became too anxious to leave the house. AR 39. Plaintiff testified that she has good days about 50 percent of the time and bad days 50 percent of the time, and she cannot predict when the bad days will occur. On good days, she does household tasks and takes care of animals, and on bad days, she sits in her recliner all day and does nothing to take care of herself. AR 41. She has severe attacks of depression once or twice a month which last up to several days. AR 43-44. Plaintiff quit therapy in 2012 because she did not think it was working. AR 41-42.

The administrative law judge did not discuss plaintiff's health with the vocational expert except to the extent that he presented the expert with a series of hypothetical questions involving an individual limited to simple, routine and repetitive tasks within a low stress job involving only occasional decision making or changes in the work setting; no interaction with the public; occasional interaction with co-workers but no engaging in tandem tasks; and no piece work or assembly line work involving fast production rates. AR 46-47. Although the vocational expert testified that such an individual could perform work in the national economy, he noted that there would be no jobs available for an individual with the same limitations who had to miss work more than once a month because of anxiety. AR 47-48.

## C. Administrative Decision

The administrative law judge issued a written decision on March 16, 2017, finding that plaintiff was severely impaired by affective and anxiety disorders but that these impairments did not meet or medically equal a listed impairment. In reviewing the "B criteria" of the mental impairment listings, he found that plaintiff had moderate limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. AR 16.

The administrative law judge further found that plaintiff retained the residual functional capacity to perform a full range of work with the following non-exertional limitations: simple, routine and repetitive tasks within a low stress job involving only occasional decision making or changes in the work setting; no interaction with the public; occasional interaction with co-workers but no engaging in tandem tasks; and no piece work or assembly line work involving fast production rates. AR 15, 17. In reaching this decision, the administrative law judge gave "some" weight to the assessments of Dr. Norton, generally stating that the marked limitations that the doctor found were "overstated" and not "very consistent with the level of functionality and generally normal presentation documented in his treatment notes." AR 16, 18. Specifically, he noted that plaintiff's mental status examinations appeared normal with the occasional exception of a flat affect and that even though plaintiff underwent counseling and took medications, she was often described as "feeling well" and enjoying time with friends and family. AR 16. The administrative law judge also noted that plaintiff cooks, does laundry and dishes, vacuums, performs pet care

7

and shops for groceries, clothes and pet food. Id. Finding that plaintiff's "problems with work related stress and the extensive public interaction required by her prior jobs" appear to be her "primary work related limitations," the administrative law judge stated that he incorporated those limitations in his residual functional capacity assessment. AR 18. He also stated that he "considered" the findings of the state agency physicians without stating what weight he gave their opinions. Id.

The administrative law judge found plaintiff's testimony "not entirely consistent with the medical evidence and other evidence in the record for the reasons previously explained," which included a limited medical record, improvement (he did not explain what he meant by this) with medications, "pretty normal" mental status evaluations and recent reports that plaintiff was "feeling well" and spending time with friends and family. Id.

The administrative law judge determined that plaintiff could not perform her past relevant work. Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that she could perform, including street cleaner, garment bagger and janitorial positions. AR 19-20.

OPINION

Plaintiff contends that the administrative law judge erred in two respects: (1) giving only some weight to Dr. Norton's 2015 and 2017 opinions that plaintiff had moderate to

8

marked limitations in many areas and would miss more than three days of work a month; and (2) improperly discrediting her testimony about her symptoms and abilities that, if credited, would have led to a finding of disability. The two issues are related in this case because the administrative law judge gave similar reasons for rejecting both types of evidence.

A. Legal Standards

The opinions of treating physicians like Dr. Norton are entitled to controlling weight if they are supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it. Id.; Hall ex re. Hall v. Astrue, 489 Fed. Appx. 956, 958 (7th Cir. 2012) ("An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight."). Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527).

To evaluate a claimant's testimony about her symptoms and limitations, an administrative law judge must consider a number of factors, including: (1) the individual's

9

daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other relevant factors concerning the individual's functional limitations and restrictions. Social Security Ruling (SSR) 16-3p. (In 2016, the Commissioner issued SSR 16-3p to update SSR 96-7p's guidance on symptom evaluation and eliminate use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." However, this clarification did not substantively change 96-7p's guidance (both rulings use the same two-step test and direct consideration of the same seven factors). Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants.").) As with a treating physician opinion, an administrative law judge must give specific reasons for rejecting a claimant's testimony that supports a finding of disabled and explain how any reported limitations are or are not consistent with the evidence in the record. Britt v. Berryhill, 889 F.3d 422, 426 (7th Cir. 2018).

With respect to the administrative law judge's decision as a whole, the deferential standard of review "does not mean that we scour the record for supportive evidence or rack

our brains for reasons to uphold the [administrative law judge's] decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014). See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). The administrative law judge need not discuss every piece of evidence, but "must build a logical bridge from evidence to conclusion." Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

B. Analysis of Dr. Norton's Opinions and Plaintiff's Self Reports

In this case, the administrative law judge explained that he found Dr. Norton's opinions and plaintiff's self-reported symptoms inconsistent with Dr. Norton's progress notes, which often described plaintiff as "feeling well" and enjoying time with friends and family and rated her mental status as "normal." He noted that the medical record was limited and that plaintiff had experienced significant improvement with medication. The administrative law judge also found it significant that plaintiff cooks, does laundry and dishes, vacuums, performs pet care and shops for groceries, clothes and pet food.

Plaintiff argues that the administrative law judge mischaracterized Dr. Norton's notes about her presentation, mood and affect during appointments and disregarded his general assessments in other sections of his notes. I agree that the administrative law judge focused improperly on select portions of Dr. Norton's treatment notes and failed to provide an

11

adequate analysis of the doctor's opinions about plaintiff's limitations. In particular, the administrative law judge focused on the portions of the treatment notes in which Dr. Norton wrote that plaintiff presented normally and was feeling well and having a stable mood. However, he did not discuss the numerous treatment notes in which Dr. Norton found that plaintiff was struggling with low moods, decreased energy, a lack of concentration or suicidal thoughts. The administrative law judge also failed to acknowledge that Dr. Norton's observations included descriptions of how plaintiff presented on the day of her appointment and were not necessarily general assessments of plaintiff's mental health. Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) ("[T]he affect and mood notes that the ALJ emphasized simply described how Gerstner presented *on the days of her appointments*. They were not general assessments.") (emphasis in original). "After all, an individual's ability to comport herself normally during [thirty-minute long psychiatry] sessions or examinations does not necessarily lead to an inference that she has the functional capacity to work full-time." Kuehl v. Berryhill, 2018 WL 4405613, at *6 (W.D. Wis. Sept. 17, 2018) (citing Gerstner, 879 F.3d at 262).

Further, as plaintiff points out, the record did not include the mental status examination notes for several of plaintiff's visits, depriving the administrative law judge of a full record. Although the Commissioner argues that plaintiff should have insured that her complete medical record had been submitted to the agency, Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ."), the administrative law judge chose to rely on Dr. Norton's mental

status examinations but failed to complete the record to get an accurate picture of plaintiff's ongoing condition. Yurt v. Colvin, 758 F.3d 850, 860 (7th Cir. 2014) ("[I]t is the ALJ who carries the burden of developing the record.").

Although the medical record is not lengthy it covers plaintiff's visits with Dr. Norton over a period of four years and clearly shows that plaintiff's symptoms varied and her mental health fluctuated. Plaintiff presented well at some appointments with Dr. Norton, but her condition often deteriorated by her next appointment. Dr. Norton found consistently that plaintiff had a diagnosis of bipolar disorder and he made numerous adjustments to her medications, with varying success, in an attempt to stabilize her condition. Gerstner, 879 F.3d at 262 (administrative law judge erred by failing to acknowledge that "every treatment note after August 2012 repeats [the same] diagnoses and treatments; he even changed the medication for [plaintiff's] bipolar disorder in January 2013 and increased the dosage three months later. These unchanged diagnoses and the medication adjustments belie the conclusion that [plaintiff's] mental health had improved").

Dr. Norton also assigned plaintiff a low global assessment of functioning score of 45, a fact that the administrative law judge failed to consider. Yurt, 758 F.3d at 860 (internal citation omitted) (although low GAF score alone is insufficient to overturn finding of no disability, failure to consider or weigh scores shows tendency to ignore or discount evidence favorable to claimant).

The administrative law judge wrote that he accounted for what seemed to be plaintiff's primary limitations related to work stress and extensive public interaction, which is consistent

13

with the findings of the state agency physicians, Dr. LeFevre and Dr. Phillips. However, he did not discuss what weight he gave the opinions of the two doctors or why he found them more persuasive than Dr. Norton's. Although both state agency physicians stressed that plaintiff's symptoms had improved as of the date of their opinions (September 2014 and April 2015), the record shows that plaintiff's symptoms deteriorated again. In addition, the administrative law judge failed to discuss or account for the fact that he, the state agency physicians and Dr. Norton all found that plaintiff had at least moderate limitations in concentration, persistence or pace. Although his residual functional capacity assessment limited plaintiff to "simple, routine and repetitive tasks" and "no piece work or assembly line work involving fast production rates," the Court of Appeals for the Seventh Circuit has made clear that these type of general functional limitations related to unskilled work do not address a claimant's general deficiencies in concentration, persistence or pace. O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010). See also Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015) (failure to define "fast paced production" was problematic); Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009) (simple, routine tasks did not account for limited ability to understand instructions); Young v. Barnhart, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration or mood swings).

The administrative law judge's reliance on plaintiff's ability to perform household tasks also was mistaken. The Court of Appeals for the Seventh Circuit has held that "although it

is appropriate for an ALJ to consider a claimant's daily activities . . . this must be done with care. We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy, 705 F.3d at 639 (collecting cases). Plaintiff testified that on good days, she does household tasks and takes care of animals, but on bad days, she sits in her recliner all day and does nothing to take care of herself. She explained that she has bad days about half of the time and that she experiences severe attacks of depression once or twice a month that last up to several days.

Finally, as plaintiff contends, after declining to give Dr. Norton's opinion controlling weight, the administrative law judge did not apply the factors enumerated in 20 C.F.R. § 404.1527(c) in a meaningful way. For example, he did not discuss Dr. Norton's lengthy relationship with plaintiff, plaintiff's continuing diagnoses of bipolar disorder, the numerous times in which Dr. Norton adjusted plaintiff's medications and the fact that plaintiff's condition varied between adequate functioning and an inability to leave her house or perform any activities. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing administrative law judge for saying "nothing regarding this required checklist of factors"); Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008) (stating that when treating physician's opinion is not given controlling weight, "the checklist comes into play").

In sum, because the administrative law judge has failed to provide an adequate explanation for rejecting Dr. Norton's opinion and plaintiff's self-reported symptoms and

limitations, I must remand this case so that he may conduct a more thorough analysis and give valid reasons for his findings that are supported with substantial evidence in the record.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Bernadette Hartman is REVERSED and this case is REMANDED to defendant Acting Commissioner of Social Security Nancy A. Berryhill for further proceedings consistent with this opinion. Judgment is to be entered in favor of plaintiff.

Entered this 4th day of October, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge